CASSANDRA J. RICHEY
State Bar No. 155721
BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
3990 E. Concours Street, Suite 350
Ontario, California 91764
(626) 371-7000 Phone
(972) 661-7726 Fax
cdcaecf@bdfgroup.com
File No. 9708934

Attorneys for Secured Creditor
WELLS FARGO BANK, N.A.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>PATRICK BENTLEY<br><br><br>\<br><br><br><br><br>Debtor. | Bankruptcy Case No. 2:23-bk-10040-VZ<br><br>Chapter 13<br><br>OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN<br><br><br><u>MEETING OF CREDITORS</u><br>DATE:    February 16, 2023<br>TIME:    9:00 AM<br><br><u>CONFIRMATION HEARING</u><br>DATE:    November 13, 2023<br>TIME:    10:00 AM<br>CTRM:    1368 |

     WELLS FARGO BANK, N.A., ("Secured Creditor") hereby objects to confirmation of PATRICK BENTLEY'S (hereinafter "Debtor") Chapter 13 Plan filed on January 17, 2023, at Docket Entry No. 11 (the "Plan") based on the following:

     1.     Secured Creditor holds a secured claim evidenced by promissory Note, (hereinafter "Note") dated May 28, 2015 in the original principal sum of $713,575.00 executed by Patrick

Bentley ("Debtor") secured by a recorded as second priority deed of trust ("Deed of Trust") executed by Debtor and non-filing Mortgagor, Huong Bentley La ("Mortgagor") encumbering the real property commonly known as **2237 Bancroft Ave, Los Angeles, CA 90039** ("Property").

2.      Secured Creditor timely filed Proof of Claim No. 2-1 which is attached hereto as **Exhibit "A"** and incorporated herein by reference.  The total claim is $846,049.93, as of the petition date, with $237,551.42 in pre-petition arrears.  The ongoing mortgage payment is $5,203.58 and includes principal, interest, real property taxes and real property insurance. Secured Creditor requests the Court take Judicial Notice pursuant Federal Rules of Evidence 201, of the timely filed Proof of Claim No. 2, the Debtor's Petition, and schedules filed herein.

3.      The Debtor's Plan treatment of creditors (Part 2, Plan terms) provides for a "step up" Plan of $765.00 for months 1-8 and then a "step up" Plan payment of $4,388.72 for months 9-60. No explanation is made for the Debtor's ability to increase the Plan payments by $3,623.72 per month starting in month nine.  In addition, in Class 2, pages 5-6 of 15, the Plan states that the Debtor will pay pre-petition arrears of $210,923.75 due Secured Creditor rather than the $237,551.42 due pursuant to the Proof of Claim No. 2-1. The Debtor would need to increase the Plan payment by approximately $522.11 over the course of the "remaining 51 months" without regard to the Chapter 13 administrative fees just to provide for payment in full on Secured Creditor's claim starting in month nine (9) through the end of the Plan.

4.      Section 1322(b)(2) of the U.S. Bankruptcy Code provides, in relevant part, as follows:

(b)  Subject to subsections (a) and (c) of this section, the plan may--

. . .

(2) modify the rights of holders of secured claims, other than a claim secured only

by a security interest in real property that is the Debtor's principal residence

. . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of

1  any default within a reasonable time and maintenance of payments while the case

2  is pending on any unsecured claim or secured claim on which the last payment is

3  due after the date on which the final payment under the plan is due; . . .

4      5.    Secured Creditor objects to any modification of its secured claim by the terms of the

5  Chapter 13 Plan as Debtor acknowledges the Property as his principal residence, and Secured

6  Creditor contends the Plan fails to provide for payment of arrears with a reasonable time. Secured

7  Creditor further contends that the Debtor has not provided any evidence that the Debtor can increase

8  the Plan payment within eight (8) months or any reason for the significant delay curing the arrears.

9  The Debtor's current Schedules I and J attached thereto as **Exhibit "B"** and incorporated herein by

10  reference, indicate only $765.00 in disposable income each month on an extremely tight budget of

11  $200.00 a month for food.  The Plan does not appear feasible.

12

13      Wherefore, based on the foregoing, Secured Creditor respectfully requests that the Court

14  deny confirmation of Debtor's Chapter 13 Plan or require an amended Chapter 13 Plan to pay

15  Secured Creditor's secured claim in full within a reasonable period of time and for evidence that the

16  Chapter 13 Plan is feasible at the "stepped up" Plan payment staring in month nine (9) and for such

17  further relief as is just.

18  DATED:  January 27, 2023        Respectfully Submitted,

19          BARRETT DAFFIN FRAPPIER

20          TREDER & WEISS, LLP

21          */s/ Cassandra J. Richey*

22          CASSANDRA J. RICHEY
        Attorneys for Secured Creditor

23

24

25

26

27

28

# EXHIBIT A

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Fill in this information to identify the case:**

Debtor 1   Patrick Bentley

Debtor 2
(Spouse, if filing) _____

United States Bankruptcy Court for the:  Central District of California

Case number 2:23-bk-10040-VZ

<u>Official Form 410</u>
# Proof of Claim

04/22

| **Part 1:** | **Identify the Claim** |
| --- | --- |

**1. Who is the current creditor?**

Wells Fargo Bank, N.A.

_____
Name of the current creditor (the person or entity to be paid for this claim)

_____
Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

[X] No

[ ] Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Wells Fargo Bank, N.A.<br>Default Document Processing<br>MAC# N9286-01Y | Wells Fargo Bank, N.A.<br>Attention: Payment Processing<br>MAC# F2302-04C |
| Name<br>P.O. Box 1629 | Name<br>1 Home Campus |
| Number        Street<br>Minneapolis MN 55440-9790 | Number        Street<br>Des Moines IA 50328 |
| City                    State        ZIP Code<br>Contact phone   800-274-7025 | City                    State        ZIP Code<br>Contact phone   800-274-7025 |
| Contact email   POCNOTIFICATIONS@WELLSFARGO.COM | Contact email   POCNOTIFICATIONS@WELLSFARGO.COM |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
<u>W F C M G F 2 3 1 0 0 4 0 C A C 8 8 9 0 1 3 7 8</u>

**EXHIBIT A**

**4. Does this claim amend one already filed?**   [X] No   ☐ Yes.   Claim number on court claims registry (if known) _____   Filed on _____
                                                                                                                                    MM/DD/YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**   [X] No   ☐ Yes.   Who made the earlier filing? _____

---

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**   ☐ No   [X] Yes.   Last 4 digits of the debtor's account or any number you use to identify the debtor: 1378

**7. How much is the claim?**   $ 846,049.93

**Does this amount include interest or other charges?**
☐ No
[X] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

**9. Is all or part of the claim secured?**   ☐ No   [X] Yes.   The claim is secured by a lien on property.

**Nature of property:**

[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:   2237 BANCROFT AVE  LOS ANGELES CA 90039

**Basis for perfection:**   Recorded Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ _____

**Amount of the claim that is secured:**   $ 846,049.93

**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 237,551.42

**Annual Interest Rate** (when case was filed)   3.875 %
[X] Fixed
☐ Variable
☐ Fixed with Steps due to loan modification

**10. Is this claim based on a lease?**   [X] No   ☐ Yes.   **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**   [X] No   ☐ Yes.   Identify the property: _____

---

**EXHIBIT A**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No.

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/20/2023
          MM / DD / YYYY

/s/ CASSANDRA J. RICHEY
Signature

**Print the name of the person who is completing and signing this claim:**

| | | |
|---|---|---|
| Name | CASSANDRA J. RICHEY | |
| | First name       Middle name       Last name | |
| Title | ATTORNEY FOR CREDITOR | |
| Company | BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | 3990 E. CONCOURS STREET SUITE 350 | |
| | Number     Street | |
| | ONTARIO, CA 91764 | |
| | City                 State     ZIP Code | |
| Contact phone | (626) 371-7020 | Email CDCAECF@BDFGROUP.COM |

**EXHIBIT A**

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Court Case Information

- 2:23-bk-10040-VZ
- Patrick Bentley
- fy: 1378
- Wells Fargo Bank, N.A.
- N/A
- Fixed Accrual

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 651,216.33 |
| Interest due: | 69,201.80 |
| Fees, costs due: | 3,119.00 |
| Escrow deficiency for funds advanced: | 114,125.56 |
| Other: | 8,387.24 |
| Less total funds on hand: | – 0.00 |
| Total debt: | 846,049.93 |

*Not to be used for payoff purposes
The principal balance includes a second loan of $5,034.76 for which interest is deferred and cannot be collected on the proof of claim.

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 110,731.50 |
| Prepetition fees due: | 3,119.00 |
| Escrow deficiency for funds advanced: | 114,125.56 |
| Projected escrow shortage: | 9,575.36 |
| Other: | 0.00 |
| Less funds on hand: | – 0.00 |
| Total prepetition arrearage: | 237,551.42 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | |
| Monthly escrow: | 3,119.00 |
| Private mortgage insurance: | |
| Optional Products: | 9,575.36 |
| Total monthly payment: | 0.00 |

*Additional changes to the monthly mortgage amount may be required because of escrow adjustments or as required...

## Loan Payment History from First Date of Default

| Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Beginning Balances | | 0.00 | | | | | | 678,939.46 | 0.00 | 0.00 |
| | | Monthly payment | 02/01/2018 | 3,355.50 | | | | | | 678,939.46 | 0.00 | 0.00 |
| | 167.78 | Late Charge | 02/01/2018 | 3,355.50 | | | | | | 678,939.46 | 0.00 | 0.00 |
| | | Monthly payment | 02/01/2018 | 6,711.00 | | | | | 167.78 | 678,939.46 | 0.00 | 0.00 |
| | 167.78 | Late Charge | 02/01/2018 | 6,711.00 | | | | | 167.78 | 678,939.46 | 0.00 | 0.00 |
| | | Monthly payment | 02/01/2018 | 10,066.50 | | | | | | 678,939.46 | 0.00 | 0.00 |
| | -335.56 | Late Charge | 02/01/2018 | 10,066.50 | | | | | -335.56 | 678,939.46 | 0.00 | 0.00 |
| 10,066.50 | | Payment | 02/01/2018 | 6,711.00 | 1,163.09 | 2,192.41 | | 0.00 | | 677,776.37 | 0.00 | 0.00 |
| 0.00 | | Payment | 03/01/2018 | 3,355.50 | 1,166.85 | 2,188.65 | | 0.00 | | 676,609.52 | 0.00 | 0.00 |
| 0.00 | | Payment | 04/01/2018 | 0.00 | 1,170.61 | 2,184.89 | | 0.00 | | 675,438.91 | 0.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 3,355.50 | | | | | | 675,438.91 | 0.00 | 0.00 |
| | 167.78 | Late Charge | 05/01/2018 | 3,355.50 | | | | | 167.78 | 675,438.91 | 0.00 | 0.00 |

**Mortgage Proof of Claim Attachment**

# EXHIBIT A

## Proof of Claim Attachment: Additional Page

2:23-bk-10040-VZ

Patrick Bentley

### Mortgage Attachment

**History from First Date of Default**

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees or charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3,355.50 | | Payment | 05/01/2018 | 3,355.50 | 1,174.39 | 2,181.11 | | 0.00 | | 0.00 | | 0.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 6,711.00 | | | | | | 674,264.52 | | 0.00 | 0.00 |
| | 167.78 | Late Charge | 05/01/2018 | 6,711.00 | | | | 167.78 | | 674,264.52 | | 0.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 10,066.50 | | | | | | 674,264.52 | | 0.00 | 0.00 |
| | 167.78 | Late Charge | 05/01/2018 | 10,066.50 | | | | 167.78 | | 674,264.52 | | 0.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 13,422.00 | | | | | | 674,264.52 | | 0.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 16,777.50 | | | | | | 674,264.52 | | 0.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 20,133.00 | | | | | | 674,264.52 | | 0.00 | 0.00 |
| | 427.50 | Attorney's fees | 05/01/2018 | 20,133.00 | | | | 427.50 | | 674,264.52 | | 0.00 | 0.00 |
| | 498.75 | Attorney's fees | 05/01/2018 | 23,488.50 | | | | 498.75 | | 674,264.52 | | 0.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 23,488.50 | | | | | | 674,264.52 | | 0.00 | 0.00 |
| | 111.00 | Recording fees | 05/01/2018 | 23,488.50 | | | | 111.00 | | 674,264.52 | | 0.00 | 0.00 |
| | 917.00 | Tsg | 05/01/2018 | 23,488.50 | | | | 917.00 | | 674,264.52 | | 0.00 | 0.00 |
| | 127.10 | Attorney costs (Other) | 05/01/2018 | 23,488.50 | | | | 127.10 | | 674,264.52 | | 0.00 | 0.00 |
| | 14.20 | Attorney costs (Other) | 05/01/2018 | 23,488.50 | | | | 14.20 | | 674,264.52 | | 0.00 | 0.00 |
| | 371.00 | Hazard Insurance Disbursement | 05/01/2018 | 23,488.50 | | | -371.00 | | | 674,264.52 | | -371.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 26,844.00 | | | | | | 674,264.52 | | -371.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 30,199.50 | | | | | | 674,264.52 | | -371.00 | 0.00 |
| | | Monthly payment | 05/01/2018 | 33,608.00 | | | | | | 674,264.52 | | -371.00 | 0.00 |
| -1,239.45 | | Miscellaneous escrow disbursement | 05/01/2018 | 33,608.00 | 0.00 | 0.00 | -1,239.45 | | | 674,264.52 | | -1,610.45 | 0.00 |
| | 10,923.05 | County tax disbursement | 05/01/2018 | 30,252.50 | 0.00 | 0.00 | -10,923.05 | | | 674,264.52 | | -12,533.50 | 0.00 |
| | 12,394.54 | County tax disbursement | 06/01/2018 | 30,252.50 | 0.00 | 0.00 | -12,394.54 | | | 674,264.52 | | -24,928.04 | 0.00 |

**Mortgage Proof of Claim Attachment**

# EXHIBIT A

**of Claim Attachment: Additional Page**

2:23-bk-10040-VZ

Patrick Bentley

**History from First Date of Default**

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12,394.53 | County tax disbursement | 06/01/2018 | 30,252.50 | 0.00 | 0.00 | -12,394.53 | | 0.00 | 0.00 | | 0.00 |
| | 10,923.06 | Property Tax | 06/01/2018 | 30,252.50 | | | | 10,923.06 | | 674,264.52 | 674,264.52 | 0.00 |
| | 4,831.13 | Property Charges | 06/01/2018 | 30,252.50 | | | | 4,831.13 | | 674,264.52 | 674,264.52 | 0.00 |
| | | Monthly payment | 06/01/2018 | 33,661.00 | | | | | | 674,264.52 | 674,264.52 | 0.00 |
| | | Monthly payment | 06/01/2018 | 37,069.50 | | | | | | 674,264.52 | 674,264.52 | 0.00 |
| | | Monthly payment | 06/01/2018 | 40,478.00 | | | | | | 674,264.52 | 674,264.52 | 0.00 |
| | 285.00 | Attorney's fees | 06/01/2018 | 40,478.00 | | | | 285.00 | | 674,264.52 | 674,264.52 | 0.00 |
| | 13.50 | Attorney costs (Other) | 06/01/2018 | 40,478.00 | | | | 13.50 | | 674,264.52 | 674,264.52 | 0.00 |
| | 83.00 | Attorney costs (Other) | 06/01/2018 | 40,478.00 | | | | 83.00 | | 674,264.52 | 674,264.52 | 0.00 |
| | 75.00 | Advertisement costs | 06/01/2018 | 40,478.00 | | | | 75.00 | | 674,264.52 | 674,264.52 | 0.00 |
| | 105.00 | Recording fees | 06/01/2018 | 40,478.00 | | | | 105.00 | | 674,264.52 | 674,264.52 | 0.00 |
| | | Monthly payment | 06/01/2018 | 43,886.50 | | | | | | 674,264.52 | 674,264.52 | 0.00 |
| | 200.00 | Advertisement costs | 06/01/2018 | 43,886.50 | | | | 200.00 | | 674,264.52 | 674,264.52 | 0.00 |
| 26,844.00 | | Payment | 06/01/2018 | 40,531.00 | 1,178.19 | 2,177.31 | 0.00 | | 0.00 | 673,086.33 | 674,264.52 | 0.00 |
| 0.00 | | Payment | 07/01/2018 | 37,175.50 | 1,181.99 | 2,173.51 | 0.00 | | 0.00 | 671,904.34 | 674,264.52 | 0.00 |
| 0.00 | | Payment | 08/01/2018 | 33,820.00 | 1,185.81 | 2,169.69 | 0.00 | | 0.00 | 670,718.53 | 674,264.52 | 0.00 |
| 0.00 | | Payment | 09/01/2018 | 30,464.50 | 1,189.64 | 2,165.86 | 0.00 | | 0.00 | 669,528.89 | 674,264.52 | 0.00 |
| 0.00 | | Payment | 10/01/2018 | 27,109.00 | 1,193.48 | 2,162.02 | 0.00 | | 0.00 | 668,335.41 | 674,264.52 | 0.00 |
| 0.00 | | Payment | 11/01/2018 | 23,753.50 | 1,197.33 | 2,158.17 | 0.00 | | 0.00 | 667,138.06 | 674,264.52 | 0.00 |
| 0.00 | | Payment | 12/01/2018 | 20,398.00 | 1,201.20 | 2,154.30 | 0.00 | | 0.00 | 665,936.88 | 674,264.52 | 0.00 |
| 0.00 | | Payment | 01/01/2019 | 17,042.50 | 1,205.08 | 2,150.42 | 0.00 | | 0.00 | 664,731.80 | 674,264.52 | 0.00 |
| -999.99 | | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 674,264.52 | 0.00 |
| -999.99 | | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 674,264.52 | 0.00 |

**Mortgage Proof of Claim Attachment**

# EXHIBIT A

**Proof of Claim Attachment: Additional Page**

2:23-bk-10040-VZ

Patrick Bentley

### History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -999.99 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -999.99 | 0.00 | 664,731.80 | 0.00 |
| | -126.42 | FCL Reinstatement | 02/01/2019 | 17,042.50 | 0.00 | 0.00 | 0.00 | 0.00 | -126.42 | 0.00 | 664,731.80 | 0.00 |
| 3,408.50 | | Payment | 02/01/2019 | 13,634.00 | 1,208.97 | 2,146.53 | 53.00 | 0.00 | | 663,522.83 | | 0.00 |
| 3,408.50 | | Payment | 03/01/2019 | 10,225.50 | 1,212.87 | 2,142.63 | 53.00 | 0.00 | | 662,309.96 | | 0.00 |
| 3,408.50 | | Payment | 04/01/2019 | 6,817.00 | 1,216.79 | 2,138.71 | 53.00 | 0.00 | | 661,093.17 | | 0.00 |
| 3,408.50 | | Payment | 05/01/2019 | 3,408.50 | 1,220.72 | 2,134.78 | 53.00 | 0.00 | | 659,872.45 | | 0.00 |
| 3,408.50 | | Payment | 06/01/2019 | 0.00 | 1,224.66 | 2,130.84 | 53.00 | 0.00 | | 658,647.79 | | 0.00 |
| | | Monthly payment | 07/01/2019 | 6,375.44 | | | | | | 658,647.79 | | 0.00 |
| | | Monthly payment | 07/01/2019 | 12,750.88 | | | | | | 658,647.79 | | 0.00 |

**Mortgage Proof of Claim Attachment**

# EXHIBIT A

Case 2:23-bk-10040-VZ   Claim 2-1 Part 2   Filed 01/20/23   Desc Mortgage Attachment
Page 5 of 10

## Proof of Claim Attachment: Additional Page

2:23-bk-10040-VZ

Patrick Bentley

### History from First Date of Default

**Account Activity** / **How Funds Were Applied/Amount Incurred** / **Balance After Amount Received or Incurred**

| C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | Fees charge balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1,821.15 | Hazard Insurance Disbursement | 07/01/2019 | 12,750.88 | 0.00 | 0.00 | 0.00 | -1,821.15 |  | 0.00 | 658,647.79 | 0.00 | -38,878.72 |
|  |  | Monthly payment | 07/01/2019 | 19,126.32 |  |  |  |  |  |  | 658,647.79 | 0.00 | -38,878.72 |
| 12,750.88 |  | Payment | 07/01/2019 | 12,750.88 | 1,228.62 | 2,126.88 | 3,019.94 |  | 0.00 |  | 657,419.17 | 0.00 | -35,887.34 |
| 0.00 |  | Payment | 08/01/2019 | 6,375.44 | 1,232.58 | 2,122.92 | 3,019.94 |  |  |  | 656,186.59 | 0.00 | -32,838.34 |
| 6,375.44 |  | Payment | 09/01/2019 | 0.00 | 1,236.56 | 2,118.94 | 3,019.94 |  | 0.00 |  | 654,950.03 | 0.00 | -29,818.34 |
|  | -167.78 | Late Charge | 10/01/2019 | 0.00 | 0.00 | 0.00 | 0.00 | -167.78 |  |  | 654,950.03 | 0.00 | -29,818.94 |
| 335.56 |  | Payment | 10/01/2019 | 0.00 | 0.00 | 0.00 | 0.00 | -335.56 |  |  | 654,950.03 | 0.00 | -29,818.94 |
|  |  | Monthly payment | 10/01/2019 | 6,375.44 |  |  |  |  |  |  | 654,950.03 | 0.00 | -29,818.94 |
| 6,860.44 |  | Payment | 10/01/2019 | 0.00 | 1,240.56 | 2,114.94 | 3,019.94 |  | 0.00 |  | 653,709.47 | 0.00 | -26,798.06 |
| -485.00 | -485.00 | Corp Adv Ph Pmt | 11/01/2019 | 0.00 | 0.00 | 0.00 | 0.00 | -485.00 |  |  | 653,709.47 | 0.00 | -26,798.06 |
|  |  | Monthly payment | 11/01/2019 | 6,375.44 |  |  |  |  |  |  | 653,709.47 | 0.00 | -26,798.06 |
| 6,375.44 |  | Payment | 11/01/2019 | 0.00 | 1,244.56 | 2,110.94 | 3,019.94 |  | 0.00 |  | 652,464.91 | 0.00 | -23,778.12 |
|  | 12,470.20 | County tax disbursement | 12/01/2019 | 0.00 | 0.00 | 0.00 |  | -12,470.20 |  |  | 652,464.91 | 0.00 | -36,249.22 |
|  |  | Monthly payment | 12/01/2019 | 6,375.44 |  |  |  |  |  |  | 652,464.91 | 0.00 | -36,249.22 |
| 6,375.44 |  | Payment | 12/01/2019 | 0.00 | 1,248.58 | 2,106.92 | 3,019.94 |  | 0.00 |  | 651,216.33 | 0.00 | -33,229.28 |
|  |  | Monthly payment | 01/01/2020 | 6,375.44 |  |  |  |  |  |  | 651,216.33 | 0.00 | -33,229.28 |
|  |  | Monthly payment | 01/01/2020 | 12,750.88 |  |  |  |  |  |  | 651,216.33 | 0.00 | -33,229.28 |
|  |  | Monthly payment | 01/01/2020 | 19,126.32 |  |  |  |  |  |  | 651,216.33 | 0.00 | -33,229.28 |
|  | 12,470.19 | County tax disbursement | 01/01/2020 | 19,126.32 | 0.00 | 0.00 |  | -12,470.19 |  |  | 651,216.33 | 0.00 | -45,699.47 |
|  |  | Monthly payment | 01/01/2020 | 25,396.95 |  |  |  |  |  |  | 651,216.33 | 0.00 | -45,699.47 |
| 0.00 |  | Non-Cash Balance Adj | 01/01/2020 | 25,396.95 | 1,252.59 | 0.00 | 0.00 |  | 0.00 |  | 649,963.74 | 0.00 | -45,699.47 |

**EXHIBIT A**

**Mortgage Proof of Claim Attachment**

# Case 2:23-bk-10040-VZ

## Proof of Claim Attachment: Additional Page

2:23-bk-10040-VZ

Patrick Bentley

### History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | L. Unapplied funds | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | | M. Principal balance | N. Accrued interest balance | O. Escrow balance | Fees charged balance |
| 0.00 | 0.00 | Non-Cash Balance Adj | 01/01/2020 | 19,021.51 | | 0.00 | 0.00 | 0.00 | | 649,963.74 | | 0.00 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 02/01/2020 | 19,021.51 | -1,252.59 | | 0.00 | 0.00 | | 651,216.33 | | 0.00 | -45,699.47 |
| | 2,102.91 | Deferred Interest | 02/01/2020 | 19,021.51 | | -2,102.91 | 0.00 | 0.00 | | 651,216.33 | | 2,102.91 | -45,699.47 |
| 0.00 | | Monthly payment | 02/01/2020 | 24,607.14 | 1,256.66 | 0.00 | 0.00 | 0.00 | 0.00 | 649,959.67 | | 2,102.91 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 02/01/2020 | 24,607.14 | | 0.00 | 0.00 | 0.00 | 0.00 | 649,959.67 | | 2,102.91 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 02/01/2020 | 18,231.70 | -1,256.66 | 0.00 | 0.00 | 0.00 | 0.00 | 651,216.33 | | 2,102.91 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 03/01/2020 | 18,231.70 | | 0.00 | 0.00 | 0.00 | | 651,216.33 | | 4,201.75 | -45,699.47 |
| | 2,098.84 | Deferred Interest | 03/01/2020 | 18,231.70 | | -2,098.84 | 0.00 | 0.00 | | 651,216.33 | | 4,201.75 | -45,699.47 |
| 0.00 | | Monthly payment | 03/01/2020 | 23,817.33 | 1,260.72 | 0.00 | 0.00 | 0.00 | 0.00 | 649,955.61 | | 4,201.75 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 03/01/2020 | 23,817.33 | | 0.00 | 0.00 | 0.00 | 0.00 | 649,955.61 | | 4,201.75 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 03/01/2020 | 17,441.89 | -1,260.72 | 0.00 | 0.00 | 0.00 | 0.00 | 651,216.33 | | 4,201.75 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 04/01/2020 | 17,441.89 | | 0.00 | 0.00 | 0.00 | | 651,216.33 | | 6,296.53 | -45,699.47 |
| | 2,094.78 | Deferred Interest | 04/01/2020 | 17,441.89 | | -2,094.78 | 0.00 | 0.00 | | 651,216.33 | | 6,296.53 | -45,699.47 |
| 0.00 | | Monthly payment | 04/01/2020 | 23,027.52 | 1,264.79 | 0.00 | 0.00 | 0.00 | 0.00 | 649,951.54 | | 6,296.53 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 04/01/2020 | 23,027.52 | | 0.00 | 0.00 | 0.00 | 0.00 | 649,951.54 | | 6,296.53 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 04/01/2020 | 16,756.89 | -1,264.79 | 0.00 | 0.00 | 0.00 | 0.00 | 651,216.33 | | 6,296.53 | -45,699.47 |
| 0.00 | 0.00 | Non-Cash Balance Adj | 05/01/2020 | 16,756.89 | | 0.00 | 0.00 | 0.00 | | 651,216.33 | | 8,387.24 | -45,699.47 |
| | 2,090.71 | Deferred Interest | 05/01/2020 | 16,756.89 | | -2,090.71 | 0.00 | 0.00 | | 651,216.33 | | | -45,699.47 |

**EXHIBIT A**

**Mortgage Proof of Claim Attachment**

**Proof of Claim Attachment: Additional Page**

2:23-bk-10040-VZ

Patrick Bentley

## History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | Fees/charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Monthly payment | 05/01/2020 | 22,342.52 | | | | | | 651,216.33 | 8,387.24 | -45,699.47 | |
| | | Monthly payment | 05/01/2020 | 27,928.15 | | | | | | 651,216.33 | 8,387.24 | -45,699.47 | |
| | 2,458.15 | Hazard Insurance Disbursement | 05/01/2020 | 27,928.15 | 0.00 | 0.00 | -2,458.15 | | | 0.00 | 651,216.33 | 8,387.24 | -48,157.62 |
| | | Monthly payment | 05/01/2020 | 33,513.78 | | | | | | 651,216.33 | 8,387.24 | -48,157.62 |
| | | Monthly payment | 05/01/2020 | 39,099.41 | | | | | | 651,216.33 | 8,387.24 | -48,157.62 |
| | 12,694.68 | County tax disbursement | 05/01/2020 | 39,099.41 | 0.00 | 0.00 | -12,694.68 | | | 0.00 | 651,216.33 | 8,387.24 | -60,852.30 |
| | | Monthly payment | 05/01/2020 | 44,685.04 | | | | | | 651,216.33 | 8,387.24 | -60,852.30 |
| | | Monthly payment | 05/01/2020 | 50,270.67 | | | | | | 651,216.33 | 8,387.24 | -60,852.30 |
| | | Monthly payment | 05/01/2020 | 55,856.30 | | | | | | 651,216.33 | 8,387.24 | -60,852.30 |
| | | Monthly payment | 05/01/2020 | 61,441.93 | | | | | | 651,216.33 | 8,387.24 | -60,852.30 |
| | 12,694.67 | County tax disbursement | 05/01/2020 | 61,441.93 | 0.00 | 0.00 | -12,694.67 | | | 0.00 | 651,216.33 | 8,387.24 | -73,546.97 |
| | | Monthly payment | 05/01/2020 | 67,118.06 | | | | | | 651,216.33 | 8,387.24 | -73,546.97 |
| | | Monthly payment | 05/01/2020 | 72,794.19 | | | | | | 651,216.33 | 8,387.24 | -73,546.97 |
| | | Monthly payment | 05/01/2020 | 78,470.32 | | | | | | 651,216.33 | 8,387.24 | -73,546.97 |
| | | Monthly payment | 05/01/2020 | 84,146.45 | | | | | | 651,216.33 | 8,387.24 | -73,546.97 |
| | | Monthly payment | 05/01/2020 | 89,822.58 | | | | | | 651,216.33 | 8,387.24 | -73,546.97 |
| | | Monthly payment | 05/01/2020 | 95,498.71 | | | | | | 651,216.33 | 8,387.24 | -73,546.97 |
| | 2,700.15 | Hazard Insurance Disbursement | 05/01/2020 | 95,498.71 | 0.00 | 0.00 | -2,700.15 | | | 0.00 | 651,216.33 | 8,387.24 | -76,247.12 |
| | | Monthly payment | 05/01/2020 | 101,174.84 | | | | | | 651,216.33 | 8,387.24 | -76,247.12 |
| | | Monthly payment | 05/01/2020 | 106,850.97 | | | | | | 651,216.33 | 8,387.24 | -76,247.12 |
| 167.78 | | Late Charge | 05/01/2020 | 106,850.97 | | | | 167.78 | | 651,216.33 | 8,387.24 | -76,247.12 |
| -167.78 | | Late Charge | 05/01/2020 | 106,850.97 | | | | -167.78 | | 651,216.33 | 8,387.24 | -76,247.12 |

# EXHIBIT A

**Mortgage Proof of Claim Attachment**

of Claim Attachment: Additional Page

2:23-bk-10040-VZ

Patrick Bentley

## History from First Date of Default

### Account Activity

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Contractual Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | L. Unapplied funds | Balance After Amount Received or Incurred | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | | M. Principal balance | N. Accrued interest balance | O. Escrow balance |
| | 12,638.47 | County tax disbursement | | 106,850.97 | 0.00 | 0.00 | -12,638.47 | | | 0.00 | 8,387.24 | -88,885.59 |
| | | Monthly payment | 05/01/2020 | 112,527.10 | | | | | | 651,216.33 | 8,387.24 | -88,885.59 |
| | | Monthly payment | 05/01/2020 | 118,203.23 | | | | | | 651,216.33 | 8,387.24 | -88,885.59 |
| | | Monthly payment | 05/01/2020 | 123,890.15 | | | | | | 651,216.33 | 8,387.24 | -88,885.59 |
| | | Monthly payment | 05/01/2020 | 129,577.07 | | | | | | 651,216.33 | 8,387.24 | -88,885.59 |
| | 12,638.45 | County tax disbursement | 05/01/2020 | 129,577.07 | 0.00 | 0.00 | -12,638.45 | | | 0.00 | 8,387.24 | -101,524.04 |
| | | Monthly payment | 05/01/2020 | 135,263.99 | | | | | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 510.00 | Attorney's fees | 05/01/2020 | 135,263.99 | | | | 510.00 | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 899.00 | Tsg | 05/01/2020 | 135,263.99 | | | | 899.00 | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 595.00 | Attorney's fees | 05/01/2020 | 135,263.99 | | | | 595.00 | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 97.00 | Recording fees | 05/01/2020 | 135,263.99 | | | | 97.00 | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 113.00 | Recording fees | 05/01/2020 | 135,263.99 | | | | 113.00 | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 50.00 | Title costs | 05/01/2020 | 135,263.99 | | | | 50.00 | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 425.00 | Attorney's fees | 05/01/2020 | 135,263.99 | | | | 425.00 | | 651,216.33 | 8,387.24 | -101,524.04 |
| | | Monthly payment | 05/01/2020 | 140,950.91 | | | | | | 651,216.33 | 8,387.24 | -101,524.04 |
| | | Monthly payment | 05/01/2020 | 146,637.83 | | | | | | 651,216.33 | 8,387.24 | -101,524.04 |
| | | Monthly payment | 05/01/2020 | 152,324.75 | | | | | | 651,216.33 | 8,387.24 | -101,524.04 |
| | | Monthly payment | 05/01/2020 | 158,011.67 | | | | | | 651,216.33 | 8,387.24 | -101,524.04 |
| | | Monthly payment | 05/01/2020 | 163,698.59 | | | | | | 651,216.33 | 8,387.24 | -101,524.04 |
| | 3,026.15 | Hazard Insurance Disbursement | 05/01/2020 | 163,698.59 | 0.00 | 0.00 | -3,026.15 | | | 0.00 | 8,387.24 | -104,550.19 |
| | 110.00 | Recording fees | 05/01/2020 | 163,698.59 | | | | 110.00 | | 651,216.33 | 8,387.24 | -104,550.19 |
| | 120.00 | Advertisement costs | 05/01/2020 | 163,698.59 | | | | 120.00 | | 651,216.33 | 8,387.24 | -104,550.19 |

**Mortgage Proof of Claim Attachment**

# EXHIBIT A

# ...f of Claim Attachment: Additional Page

2:23-bk-10040-VZ

Patrick Bentley

## History from First Date of Default

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Contractual Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | Fees charges balance |
| | | | Monthly payment | 05/01/2020 | 169,385.51 | | | | | | 651,216.33 | 8,387.24 | -104,550.19 | |
| | | 200.00 | Advertisement costs | 05/01/2020 | 169,385.51 | | | | 200.00 | | 651,216.33 | 8,387.24 | -104,55... | |
| | | | Monthly payment | 05/01/2020 | 175,072.43 | | | | | | 651,216.33 | 8,387.24 | -104,55... | |
| | 9,575.37 | | County tax disbursement | 05/01/2020 | 175,072.43 | 0.00 | 0.00 | -9,575.37 | | 0.00 | 651,216.33 | 8,387.24 | -114,12... | |
| | | | Monthly payment | 05/01/2020 | 180,759.35 | | | | | | 651,216.33 | 8,387.24 | -114,12... | |
| | | | Monthly payment | 05/01/2020 | 186,446.27 | | | | | | 651,216.33 | 8,387.24 | -114,12... | |
| | | | Bankruptcy Filed | 05/01/2020 | 186,446.27 | | | | | | 651,216.33 | 8,387.24 | -114,12... | |

**Mortgage Proof of Claim Attachment**

**EXHIBIT A**

**Additional Disclaimers (where applicable)**

### 410

**Part 2:** Question 9-Describe contains the property address and may contain a description for "Other".

### 410A

**Part 1:**

Full creditor name cannot be displayed due to space limitation, see 410 part 1.1 for full name.

**Part 2:**

Principal Balance is from Part 5, Column M as of the Bankruptcy File Date.

Interest Due is the interest due as of the Bankruptcy File Date.

Fees, costs due is from Part 5, Column P as of the Bankruptcy File Date and includes any outstanding fees (i.e. late charges, property inspections) and cost (i.e. attorney costs), also included are corporate advances (i.e. tax, insurance) for non-escrowed loans as of the Bankruptcy File Date.  Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow deficiency for funds advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Other includes any applicable Private Mortgage Insurance, other Optional Products (i.e. A & H, Life) or Deferred Interest, where applicable, due as of the Bankruptcy File Date. This line was added to ensure transparency.

Less Total Funds on hand is the total of Part 5, Column O (if positive balance) and Q as of the Bankruptcy File Date.

Total Debt not to be used for payoff purposes.

**Part 3:**

Principal and Interest is the principal and interest portion of Part 5, Column G, as of the Bankruptcy File Date.  (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition principal and interest amounts).

Pre-Petition Fees Due is from Part 5, Column P as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow Deficiency for Funds Advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Projected Escrow Shortage is the Escrow Required from the escrow analysis minus a positive escrow balance as of the Bankruptcy File Date.  (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition escrow amounts).

Other includes any applicable Optional Products (i.e. A & H, Life) due as of the bankruptcy file date. This line was added to ensure transparency.  (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition Optional Product amounts).

Less Funds on Hand is from Part 5, column Q as of the Bankruptcy File Date.

**Part 4:**

Optional Products includes any applicable optional products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.

(*)This disclaimer has been added to the form to explain that the monthly payment amount may change periodically throughout the life of the loan.

**Part 5:**

If any of the transactions in the loan payment history contain amounts for optional products, the amount for that product will be reflected in either the Contractual payment amount or the Funds Received amount, and will be applied in those amounts. It will also be reflected in column G as described below.

Column G  In addition to the items listed, this also includes any past due PMI or optional products (i.e. A & H, Life) amounts, as applicable. Optional product (i.e. A & H, Life) amounts will not be included in columns H-Q due to no appropriate column heading for this type of transaction.

Column J includes taxes, insurance and MIP/PMI as applicable.

**EXHIBIT A**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
3990 E. CONCOURS STREET, SUITE 350, ONTARIO, CA 91764.

A true and correct copy of the foregoing document entitled (*specify*): Proof of Claim

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) ___01/20/2023___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Judge: Vincent P. Zurzolo, U.S. Bankruptcy Court, 255 E. Temple Street, Suite 1360 ,Los Angeles, CA, 90012-3332
Debtor: Patrick Bentley, 2237 Bancroft Avenue, Los Angeles, CA 90039
Debtor: Patrick Bentley, 2237 Bancroft Ave, Los Angeles, CA 90039
Debtor Attorney: Joshua L. Sternberg, Sternberg Law Group, 8605 Santa Monica Blvd, Ste # 81823, West Hollywood, CA 90069-4109
Trustee - Court: Nancy Curry, 1000 Wilshire Blvd, Suite 870, Los Angeles, CA 90017

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 20, 2023 | CASSANDRA J. RICHEY | /s/ CASSANDRA J. RICHEY |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012   bkcace_F9013-31_POS.rpt-08/Central/Los Angeles/00000009708934

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT A

# Note

| May 28, 2015 | West Hollywood | CA |
|---|---|---|
| [Date] | [City] | [State] |

2237 Bancroft AVE, Los Angeles, CA 90039

[Property Address]

**1. Borrower's Promise to Pay.** In return for a loan that I have received, I promise to pay U.S. $713,575.00 (this amount is called *"Principal"*), plus interest, to the order of the Lender. The Lender is Wells Fargo Bank, N.A.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the *"Note Holder"*.

**2. Interest.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. Payments.**

    **(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on July 1, 2015. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2045, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the *"Maturity Date"*.

I will make my monthly payments at PO Box 11701, Newark, NJ 07101-4701 or at a different place if required by the Note Holder.

    **(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $3,355.50.

**4. Borrower's Right to Prepay.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a *"Prepayment"*. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. Loan Charges.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. Borrower's Failure to Pay as Required.**

HCFG-00017
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3200 (1/01)
08/14

# EXHIBIT A

**(A) Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

**(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. Giving of Notices.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. Obligations of Persons Under This Note.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. Waivers.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. *"Presentment"* means the right to require the Note Holder to demand payment of amounts due. *"Notice of Dishonor"* means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Uniform Secured Note.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

HCFG-00017
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3200 (1/01)
06/14

**EXHIBIT A**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**Borrower**

_____    5-28-15
**Patrick Bentley**                                    **Date**
                                                                 *Seal*

                                                        *[Sign Original Only]*

**Loan Origination Organization:** Wells Fargo     **Loan Originator:** SCOTT NADLER
Bank N.A.                                           **NMLSR ID:** 450933
**NMLSR ID:** 399801



HCFG-00017
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 (1/01)
VMP®                                                                                                    08/14
Wolters Kluwer Financial Services

# EXHIBIT A

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY_____
DAVID C. PETERSON, SENIOR VICE PRESIDENT

002

**EXHIBIT A**

Recording Requested By: Wells Fargo
Bank, N.A.

Return To: Wells Fargo Bank, N.A.
FINAL DOCS N0012-01B
6200 PARK AVE
DES MOINES, IA 50321

05/29/2015

# Deed of Trust

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated May 28, 2015, together with all Riders to this document.

(B) *"Borrower"* is Huong Bentley La and Patrick Bentley, Wife and Husband as Joint Tenants. Borrower's address is 2424 TESLA TER, LOS ANGELES, CA 90039-2645. Borrower is the trustor under this Security Instrument.

(C) *"Lender"* is Wells Fargo Bank, N.A.. Lender is a corporation organized and existing under the laws of United States of America. Lender's address is 101 North Phillips Avenue, Sioux Falls, SD 57104. Lender is the beneficiary under this Security Instrument.

(D) *"Trustee"* is Fidelity National Title Ins Co.

(E) *"Note"* means the promissory note signed by Borrower and dated May 28, 2015. The Note states that Borrower owes Lender seven hundred thirteen thousand five hundred seventy-five and 00/100 Dollars (U.S. $713,575.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2045.

(F) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

(G) *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ 1-4 Family Rider
☐ VA Rider    ☐ Biweekly Payment Rider    ☐ Other(s) [specify]

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                      Form 3005 1/01
VMP®                                                                                                     08/14
Wolters Kluwer Financial Services

**EXHIBIT A**

**(I)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** *"Escrow Items"* means those items that are described in Section 3.

**(M)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of Los Angeles [Name of Recording Jurisdiction] SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF ✓ Exhibit A

Parcel ID Number: 5440-018-020 which currently has the address of 2237 Bancroft AVE [Street] Los Angeles [City], California 90039 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

**EXHIBIT A**

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

# EXHIBIT A

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_Patrick Bentley_                          5/28/15
**Patrick Bentley**                        **Date**
                                           Seal

_Huong Bentley La_                         5/28/2015
**Huong Bentley La**                       **Date**
                                           Seal

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

**State of California**

County of _Los Angeles_

On _May 28, 2015_, before me, _Adrienne C. Solano_____, Notary Public, personally appeared

_Patrick Bentley and Huong Bentley La_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
_Notary Public_
_My commission expires:_

ADRIENNE C. SOLANO
Commission # 2075155
Notary Public - California
Los Angeles County
My Comm. Expires Jul 19, 2018

---

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
Form 3005 1/01
08/14

# EXHIBIT A

**Loan Origination Organization:** Wells Fargo
Bank N.A.
**NMLSR ID:** 399801

**Loan Originator:** SCOTT NADLER
**NMLSR ID:** 450933

HCFG-00359
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/14

**EXHIBIT A**

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 255 of St. Albans Lake Place, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 14 Page(s) 46 and 47 of Maps, in the office of the County Recorder of said County.



**This page is part of your document - DO NOT DISCARD**





**Pages:**
**0016**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/29/15 AT 01:49PM**

| | |
|---|---|
| FEES: | 67.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 67.00 |



**SEQ:**
**02**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



# EXHIBIT A

**WELLS FARGO HOME MORTGAGE**

Wells Fargo Home Mortgage
One Home Campus
Des Moines, IA 50328-0001

| Loan number: | |
|---|---|

| Transaction Description | Date Applied | Escrow Disbursement(s): | Escrow Receipt(s): | Escrow Account Balance |
|---|---|---|---|---|
| Account History Range | 01/05/22 - 01/05/23 | | | |
| Starting Balance | 11/24/2022 | | | ($88,885.59) |
| County Tax | Mar 2022 | ($12,638.45) | | ($101,524.04) |
| Hazard Insurance | Sep 2022 | ($3,026.15) | | ($104,550.19) |
| County Tax | Nov 2022 | ($9,575.37) | | ($114,125.56) |
| Ending Totals/Balances | | ($25,239.97) | $0.00 | ($114,125.56) |
| Bankruptcy filed | 1/5/2023 | | | |

**EXHIBIT A**

PATRICK BENTLEY
17951 MARTHA ST
ENCINO CA 91316-1050



Customer: 01/27/23

**Online**
wellsfargo.com

**Correspondence**
PO Box 10335
Des Moines, IA 50306

**To learn more, go to:**
wellsfargo.com/escrow

**Telephone**
1-800-340-0473

**Hours of operation**
Mon - Fri 7 a.m. - 7 p.m. CT

We accept telecommunications relay service calls

---

*PLEASE NOTE: If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only. The summaries below are based on the terms of the loan and are provided for informational purposes only.*

These amounts are governed by the terms of the loan unless otherwise reduced by an order of the bankruptcy court. Because the amounts billed for the escrow items can change over time, we review the escrow account at least once per year to ensure there will be enough money to make these payments. Once the review is complete, we send the escrow review statement, also known as the escrow account disclosure statement.

Here's what we found:
- **Required minimum balance**: The escrow account balance is projected to be equal to the required minimum balance.

- **Payments**: As of the **February 1, 2023** payment, the contractual portion of the escrow payment **decreases**.

> The account balance is sufficient. Our review shows no projected shortage or overage.

## Part 1 - Mortgage payment

### New Payment
**The new total payment will be $5,203.58**

| | Previous payment through 01/01/2023 payment date | New payment beginning with the 02/01/2023 payment |
|---|---|---|
| Principal and/or interest | $3,355.50 | $3,355.50 |
| Escrow payment | $2,331.42 | $1,848.08 |
| Total payment amount | $5,686.92 | $5,203.58 |

### No action required

Starting **February 1, 2023** the new contractual payment amount will be **$5,203.58**

See Page 2 for additional details.

**EXHIBIT A**

To determine the escrow payment, we add the projected escrow items to be paid over the next 12 months. We base these projected amounts on any escrow items that may have been paid in the past and any future anticipated payments to be made. We then divide the amounts by 12 payments to determine the escrow amount.

The chart below includes any actual escrow disbursements as well as any shortage that may have been identified for the past three analysis periods up through the date of the analysis.

## Escrow comparison

| | 04/20 - 03/21 (Actual) | 04/21 - 03/22 (Actual) | 02/22 - 01/23 (Actual) | 02/23 - 01/24 (Projected) | | # of months | | New monthly escrow amount |
|---|---|---|---|---|---|---|---|---|
| **Property taxes** | $25,389.35 | $25,276.92 | $22,213.82 | $19,150.74 | ÷ | **12** | = | $1,595.90 |
| **Property insurance** | $2,458.15 | $2,700.15 | $3,026.15 | $3,026.15 | ÷ | **12** | = | $252.18 |
| **Total taxes and insurance** | $27,847.50 | $27,977.07 | $25,239.97 | $22,176.89 | ÷ | **12** | = | **$1,848.08** |
| **Escrow shortage** | $41,099.91 | $46,121.76 | $38,564.33 | $0.00 | | | | |
| **Total escrow** | $68,947.41 | $74,098.83 | $63,804.30 | $22,176.89 | | | | $1,848.08 |

## Projected escrow account activity over the next 12 months

To determine if there will be a shortage or overage in the account, we calculate whether the amount of the lowest projected escrow balance will be greater or less than the required minimum balance. This is determined by subtracting the required minimum balance from the lowest projected balance. If the outcome is positive, there is an overage. If it is negative, there is a shortage. The calculation is below:

| Lowest projected escrow balance  March, 2023 | | **-$44,290.00** | (Calculated in Part 3 - Escrow account projections table) |
|---|---|---|---|
| Bankruptcy adjustment[‡] | + | **$47,986.15** | |
| Minimum balance for the escrow account[†] | - | **$3,696.15** | (Calculated as: $1,848.08  X 2 months) |
| **Escrow overage/shortage** | = | **$0.00** | (escrow balance is sufficient) |

[‡]This adjustment of $47,986.15, is the remaining amount of the pre-petition escrow shortage included in our proof of claim being paid through the confirmed bankruptcy plan.

[†]The minimum balance includes a cash reserve to help cover any increase in taxes and/or insurance. To calculate the cash reserve for the escrow account, we add the yearly escrow payments, and divide by 12. We take this amount and multiply it by 2 as allowed by state laws and/or the mortgage contract to determine the cash reserve.

# EXHIBIT A

| Date | Payments to escrow | Expect to pay out | Description | Projected escrow balance | Balance required in the account |
|---|---|---|---|---|---|
| Jan 2023 | | | Starting balance | -$38,410.79 | $9,575.36 |
| Feb 2023 | $1,848.08 | $0.00 | | -$36,562.71 | $11,423.44 |
| Mar 2023 | $1,848.08 | $9,575.37 | LOS ANGELES COUNTY (W) | -$44,290.00 | $3,696.15 |
| Apr 2023 | $1,848.08 | $0.00 | | -$42,441.92 | $5,544.23 |
| May 2023 | $1,848.08 | $0.00 | | -$40,593.84 | $7,392.31 |
| Jun 2023 | $1,848.08 | $0.00 | | -$38,745.76 | $9,240.39 |
| Jul 2023 | $1,848.08 | $0.00 | | -$36,897.68 | $11,088.47 |
| Aug 2023 | $1,848.08 | $0.00 | | -$35,049.60 | $12,936.55 |
| Sep 2023 | $1,848.08 | $3,026.15 | AMICA MUTUAL INS CO | -$36,227.67 | $11,758.48 |
| Oct 2023 | $1,848.08 | $0.00 | | -$34,379.59 | $13,606.56 |
| Nov 2023 | $1,848.08 | $9,575.37 | LOS ANGELES COUNTY (W) | -$42,106.88 | $5,879.27 |
| Dec 2023 | $1,848.08 | $0.00 | | -$40,258.80 | $7,727.35 |
| Jan 2024 | $1,848.08 | $0.00 | | -$38,410.72 | $9,575.43 |
| Totals | $22,176.96 | $22,176.89 | | | |

## Part 4 - Escrow account history

Escrow account activity from February, 2022 to January, 2023

| Date | Deposits to escrow | | | Payments from escrow | | | Description | Escrow balance | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Projected | Difference | Actual | Projected | Difference | | Actual | Projected | Difference |
| Feb 2022 | | | | | | | Starting Balance | -$88,885.59 | $12,638.47 | -$101,524.0 |
| Feb 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$88,885.59 | $14,969.89 | -$103,855.4 |
| Mar 2022 | $0.00 | $2,331.42 | -$2,331.42 | $12,638.45 | $12,638.47 | -$0.02 | LOS ANGELES COUNTY (W) | -$101,524.0 | $4,662.84 | -$106,186.8 |
| Apr 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$101,524.0 | $6,994.26 | -$108,518.3 |
| May 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$101,524.0 | $9,325.68 | -$110,849.7 |
| Jun 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$101,524.0 | $11,657.10 | -$113,181.14 |
| Jul 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$101,524.0 | $13,988.52 | -$115,512.56 |
| Aug 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$101,524.0 | $16,319.94 | -$117,843.9 |
| Sep 2022 | $0.00 | $2,331.42 | -$2,331.42 | $3,026.15 | $2,700.15 | $326.00 | AMICA MUTUAL INS CO | -$104,550.1 | $15,951.21 | -$120,501.4 |
| Oct 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$104,550.1 | $18,282.63 | -$122,832.8 |
| Nov 2022 | $0.00 | $2,331.42 | -$2,331.42 | $9,575.37 | $12,638.47 | -$3,063.10 | LOS ANGELES COUNTY (W) | -$114,125.56 | $7,975.58 | -$122,101.14 |
| Dec 2022 | $0.00 | $2,331.42 | -$2,331.42 | $0.00 | $0.00 | $0.00 | | -$114,125.56 | $10,307.00 | -$124,432.5 |
| Jan 2023 (estimate) | $75,714.77 | $2,331.42 | $73,383.35 | $0.00 | $0.00 | $0.00 | | -$38,410.79 | $12,638.42 | -$51,049.21 |
| Totals | $75,714.77 | $27,977.04 | $47,737.73 | $25,239.97 | $27,977.09 | -$2,737.12 | | | | |

# EXHIBIT A

# EXHIBIT B

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Patrick Bentley** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **2:23-bk-10040-VZ** |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Employment**

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

|  | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| **Employment status** | ☑ Employed <br> ☐ Not employed | ☐ Employed <br> ☐ Not employed |
| **Occupation** | **Self Employed** | |
| **Employer's name** | | |
| **Employer's address** | | |
| **How long employed there?** | | |

**Part 2:    Give Details About Monthly Income**

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ 0.00 | $ N/A |
| 3. | Estimate and list monthly overtime pay. | 3. +$ 0.00 | +$ N/A |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. $ 0.00 | $ N/A |

## EXHIBIT B

Debtor 1    **Patrick Bentley**                                                   Case number (*if known*)    **2:23-bk-10040-VZ**

|  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 0.00 | $ N/A |
| 5. | **List all payroll deductions:** | | | |
| | 5a. Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ N/A |
| | 5b. Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ N/A |
| | 5c. Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ N/A |
| | 5d. Required repayments of retirement fund loans | 5d. | $ 0.00 | $ N/A |
| | 5e. Insurance | 5e. | $ 0.00 | $ N/A |
| | 5f. Domestic support obligations | 5f. | $ 0.00 | $ N/A |
| | 5g. Union dues | 5g. | $ 0.00 | $ N/A |
| | 5h. Other deductions. Specify: _____ | 5h.+ | $ 0.00 | + $ N/A |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 0.00 | $ N/A |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 0.00 | $ N/A |
| 8. | **List all other income regularly received:** | | | |
| | 8a. **Net income from rental property and from operating a business, profession, or farm** | | | |
| | Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 8,328.48 | $ N/A |
| | 8b. **Interest and dividends** | 8b. | $ 0.00 | $ N/A |
| | 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive** | | | |
| | Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| | 8d. **Unemployment compensation** | 8d. | $ 0.00 | $ N/A |
| | 8e. **Social Security** | 8e. | $ 0.00 | $ N/A |
| | 8f. **Other government assistance that you regularly receive** | | | |
| | Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. | | | |
| | Specify: _____ | 8f. | $ 0.00 | $ N/A |
| | 8g. **Pension or retirement income** | 8g. | $ 0.00 | $ N/A |
| | 8h. **Other monthly income.** Specify: _____ | 8h.+ | $ 0.00 | + $ N/A |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 8,328.48 | $ N/A |
| 10. | **Calculate monthly income.** Add line 7 + line 9. | 10. | $ 8,328.48 + $ N/A = $ 8,328.48 | |
| | Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | | | |

11. **State all other regular contributions to the expenses that you list in *Schedule J*.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: _____                                                                11. + $ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies                                        12. $ 8,328.48

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
■ No.
☐ Yes. Explain: _____

# EXHIBIT B

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Patrick Bentley** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | **2:23-bk-10040-VZ** |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
# Schedule J: Your Expenses                                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

       ☐ No
       ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   ■ No

   Do not list Debtor 1 and Debtor 2.   ☐ Yes.  Fill out this information for each dependent...............

   Do not state the dependents names.

   | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|
   | _____ | _____ | ☐ No ☐ Yes |
   | _____ | _____ | ☐ No ☐ Yes |
   | _____ | _____ | ☐ No ☐ Yes |
   | _____ | _____ | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   ■ No
   ☐ Yes

### Part 2:  Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | **Your expenses** |
|---|---|---|

4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.                     4. $                 **6,458.21**

   If not included in line 4:

   4a. Real estate taxes                                              4a. $                 **0.00**
   4b. Property, homeowner's, or renter's insurance                  4b. $                 **0.00**
   4c. Home maintenance, repair, and upkeep expenses                 4c. $                 **0.00**
   4d. Homeowner's association or condominium dues                   4d. $                 **0.00**
5. Additional mortgage payments for your residence, such as home equity loans   5. $                 **483.71**

# EXHIBIT B

| Debtor 1 | **Patrick Bentley** | Case number (if known) | **2:23-bk-10040-VZ** |
|---|---|---|---|

| 6. | **Utilities:** | | | |
|---|---|---|---|---|
| | 6a. | Electricity, heat, natural gas | 6a. $ | 100.00 |
| | 6b. | Water, sewer, garbage collection | 6b. $ | 20.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 0.00 |
| | 6d. | Other. Specify: | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | | 7. $ | 200.00 |
| 8. | **Childcare and children's education costs** | | 8. $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | 50.00 |
| 10. | **Personal care products and services** | | 10. $ | 0.00 |
| 11. | **Medical and dental expenses** | | 11. $ | 0.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. | | 12. $ | 100.00 |
| | Do not include car payments. | | | |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | 0.00 |
| 14. | **Charitable contributions and religious donations** | | 14. $ | 0.00 |
| 15. | **Insurance.** | | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. $ | 0.00 |
| | 15b. | Health insurance | 15b. $ | 0.00 |
| | 15c. | Vehicle insurance | 15c. $ | 151.00 |
| | 15d. | Other insurance. Specify: | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. | | 16. $ | 0.00 |
| | Specify: | | | |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | 0.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c. | Other. Specify: | 17c. $ | 0.00 |
| | 17d. | Other. Specify: | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** | | 19. $ | |
| | Specify: | | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.** | | | |
| | 20a. | Mortgages on other property | 20a. $ | 0.00 |
| | 20b. | Real estate taxes | 20b. $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. | **Other:** Specify: | | 21. +$ | 0.00 |

| 22. | **Calculate your monthly expenses** | | |
|---|---|---|---|
| | 22a. Add lines 4 through 21. | $ | 7,562.92 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | 7,562.92 |

| 23. | **Calculate your monthly net income.** | | |
|---|---|---|---|
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 8,328.48 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 7,562.92 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. $ | 765.56 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes.    Explain here:

# EXHIBIT B

**Fill in this information to identify your case:**

| Debtor 1 | **Patrick Bentley** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number    2:23-bk-10040-VZ
(if known)

☐ Check if this is an
   amended filing

Official Form 106Dec
# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Sign Below

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

■ No

☐ Yes. Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X /s/ Patrick Bentley                                    X _____
**Patrick Bentley**                                         Signature of Debtor 2
Signature of Debtor 1

Date    **January 16, 2023**                               Date

Official Form 106Dec                    Declaration About an Individual Debtor's Schedules

# EXHIBIT B

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
3990 E. Concours Street, Suite 350, Ontario, CA 91764

A true and correct copy of the foregoing document entitled (*specify*): <u>OBJECTION TO CONFIRMATION OF CHAPTER 13
PLAN</u>  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and
**(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*),
<u>01/27/2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Attorney for Debtor: Joshua L Sternberg - js@sternberglawgroup.com, SternbergJR96851@notify.bestcase.com
Trustee: Nancy K Curry -  TrusteeECFMail@gmail.com
United States Trustee (LA):  ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>01/27/2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case
or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first
class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge
<u>will be completed</u> no later than 24 hours after the document is filed.

Debtor: Patrick Bentley, 2237 Bancroft Avenue, Los Angeles, CA 90039

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/27/2023 | CASSANDRA J. RICHEY | /s/ Cassandra J. Richey |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.